[Civ. No. 3183.    Second Appellate District, Division Two.—January 14, 1921.]

HARPER REYNOLDS COMPANY (a Corporation), et al., Respondents, v. HAMMOND LUMBER COMPANY (a Corporation), et al., Appellants.

[1] MECHANICS' LIENS—ADVANCE OF MONEYS FOR MATERIALS—DEED OF TRUST AS SECURITY FOR PAYMENT—PRIORITY OVER SUBSEQUENT LIEN CLAIMANTS—CONSTRUCTIVE FRAUD.—Where an owner, intending to have certain building improvements made on his property, employs another as his agent and representative for the purpose of raising funds for the carrying on of the work, as well as to purchase material and to superintend construction, and, for use of such representative in carrying on the work and raising the necessary funds, executes in his favor a promissory note, secured by a deed of trust on the property, which is duly recorded, and such note and deed of trust are immediately assigned to a third party in payment of "credits and materials" to be furnished for use on the job, and which are furnished, the lien of that deed of trust is superior to the liens of other materialmen who furnish labor and materials for use on the job subsequent to its recordation and assignment; and the execution of such deed of trust does not constitute a constructive fraud on said materialmen.

APPEAL from a judgment of the Superior Court of Los Angeles County.    John W. Shenk, Judge.    Reversed.

The facts are stated in the opinion of the court.

R. L. Horton for Appellants.

Richard J. O. Culver, Wheeler & Sweet, Henry O. Wackerbarth and Behymer & Craig for Respondents.

WORKS, J.—This is an appeal from a judgment for the foreclosure of certain mechanics' liens, and is prosecuted upon the judgment-roll.    There is but one question presented by the appeal.    The appellant Hammond Lumber Company claims a priority over the liens of the respondents under a certain trust deed through a breach of the conditions of which it holds a grant deed to the property which is subject to the decree or foreclosure rendered by the trial court.

On April 29, 1915, Fred W. Siegel, as the party of the first part, and Lawrence Holmes, as the party of the second part, entered into an agreement, the entire text of which, after its introductory parts, follows:

"That the said party of the first part in consideration of the covenants on the part of the said · party of the second part, hereinafter contained, hereby covenants with the said party of the second part, that the said party of the first part will order and have furnished all labor and material necessary for the erection and completion of the additions and alterations to 702 West Third Street, the additions to consist of adding two stories of brick to the present structure and building an addition of four floors and basement of brick in the rear; the alterations to consist of converting part of the existing stores into a hotel lobby and altering positions of partitions, plumbing, etc., on the second floor, said building being in the city of Los Angeles, county of Los Angeles, state of California, on the northerly thirty-one (31) feet of the easterly forty-five (45) feet of lot nine (9), block S, and the easterly forty-five (45) feet of lot ten (10), block S, of the Mott Tract, as per book 14, page 7 of miscellaneous records of said county, according to the plans and specifications hereto attached and made a part hereof.

"It is further understood and agreed by the parties hereto that all labor, material and sub-contracts employed in the construction of said building shall be approved by the party of the second part before any purchase or contract is consummated. All material to be purchased as cheaply as possible and all sub-contracts to be let on competitive bids.

"It is further understood and agreed between parties hereto that in case the money supplied for the construction of said building by the Fidelity Savings and Loan Association, amounting to eleven thousand and five hundred ($11,500) dollars, together with second trust deed made to Fred W. Siegel, amounting to twelve thousand and five hundred ($12,500) dollars, should not be sufficient to pay the total cost of the construction of said building as herein provided, then and in such event, the party of the second part agrees to immediately supply such amount of money as may be necessary for the completion of aforesaid build-

ing as herein provided, and in case there shall be more money than required same shall be applied on trust deed.

"And the said party of the second part in consideration of said covenants on the part of the said party of the first part hereinbefore contained, agrees to and with the said party of the first part that the said party of the second part will on demand and as bills are presented, checked off and approved, pay all bills for material and labor as same are used and furnished in the construction of the said building.

"The party of the first part agrees to superintend the construction of said building, to order all material and labor, and to generally look after the erection and economical construction of said building, and the party of the second part agrees to pay to the party of the first part for said services a sum equal to ten per cent of the total cost of the construction of said building, including · all labor and material, laid on the ground, including everything of every nature up to the time . of the completion of said building; payment to be made to said first party by said second party as the bills are paid by said second party, this ten per cent being an additional payment to the cost of construction aforesaid.

"It is also agreed and understood by and between the parties hereto that said party of the second part will insure the said building when the rough lumber is delivered on the ground.

"Time is the essence of this contract, hence all work shall be rushed as much as possible. The said party of the first part shall not in any event exceed one hundred and fifty working days from date hereof; but the time during which the party of the first part is delayed in said work by the acts or neglects of the owner or his employees or those under him by contract or otherwise, or by the acts of God which the party of the first part could not have reasonably foreseen and provided for, or by stormy and inclement weather which delays the work, or by any strikes, boycotts or like obstructive action by employees or labor organizations, shall be added to the aforesaid time for completion, by a fair and reasonable allowance; also any additional time required for additional ' or extra work ordered by the owner."

The second trust deed mentioned in the agreement was executed by Holmes on May 8, 1915, Siegel being the beneficiary under it, and Holmes then also made and delivered the promissory note for twelve thousand five hundred dollars, for the payment of which the trust deed was security. On the same day Siegel transferred the note and the trust deed to the appellant Hammond Lumber Company, the consideration for the transfer being the agreement of the latter to pay to Siegel the sum of twelve thousand five hundred dollars in "credits and materials." This payment was later made.

The trust deed was placed of record on May 17, 1915. The various agreements of the respondents to furnish labor and materials for the job mentioned in the contract were of date, respectively, August 12, September 3, and September 21, 1915, and March 10, 1916. The power of sale in the trust deed was exercised, on account of a breach of conditions named in the deed, and pursuant to the sale a grant deed was executed to the appellant Hammond Lumber Company November 4, 1916, and it was recorded January 13, 1917.

The trial court found that the execution of the trust deed for the benefit of Siegel was a constructive fraud upon the respondents, and that, in accepting the note and trust deed, Siegel attempted to assign a portion of the contract price for the performance of the work contemplated by the agreement. Upon these findings it was decreed that the lien claims of the respondents are superior to the rights of appellant Hammond Lumber Company accruing to it pursuant to the provisions of the trust deed.

Our first and practically our only labor must be to place a construction upon the agreement entered into between Siegel and Holmes. The respondents contend that the instrument made Siegel an original contractor for the performance of the work mentioned in it, and the findings of the trial court constantly so term him. It is apparent from the nature of the particular findings above specifically noted that the trial court so considered him. [1] On the other hand, appellants view the contract as one consummating an employment of Siegel as a mere representative or agent of Holmes, so constituted for the purpose of raising funds for the carrying on of the work as well as to purchase material and to superintend construction.

The terms of the contract, loosely drawn as it is, furnish some basis for these warring claims as to its meaning; but probably the strongest argument to be made in support of the contention that under it Siegel was an original contractor is to be found in the fact that he executed a bond to secure laborers and materialmen in the performance of labor and the furnishing of materials for the job. We are far from satisfied, however, that Siegel was an original contractor. The fact that, according to the terms of the agreement, he was to "order and have furnished all labor and material necessary" for the work; that "all labor, material and subcontracts employed in the construction" of the improvement were to be "approved" by Holmes "before any purchase or contract is consummated"; that the money to the extent of eleven thousand five hundred dollars supplied by the Fidelity Savings and Loan Association, "together with the second trust deed made to Fred W. Siegel, amounting to" twelve thousand five hundred dollars, was supposed, in the first instance, at least, to "be sufficient to pay the total cost of the construction of said building as herein provided"; that Holmes would, "on demand and as bills are presented, checked off and approved, pay all bills for material and labor as same are used and furnished" in construction; that Siegel "agrees to superintend the construction of said building, to order all material and labor, and to generally look after the erection and economical construction of said building"; that Holmes "agrees to pay to" Siegel "for said services a sum equal to ten per cent of the total cost of the construction of said building"; these circumstances, we say, convince us that the construction of the agreement which is contended for by appellants is the correct one. That being so, the Siegel trust deed, in so far as the rights of the beneficiary under it are concerned, stands exactly in the same position as the trust deed which, pursuant to the terms of the agreement, was executed in favor of the Fidelity Savings and Loan Association. As the latter instrument was plainly superior to the lien claims of the respondents (*W. P. Fuller & Co.* v. *McClure*, 48 Cal. App. 185, [191 Pac. 1027]), so was the trust deed to Siegel. The findings of the trial court to the effect that the execution of the Siegel trust deed was a constructive fraud upon respondents and

that Siegel, by accepting the trust deed, attempted to assign a portion of the contract price, are not supported by the evidence.

The judgment is reversed.

Finlayson, P. J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 14, 1921.

Shaw, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.

Angellotti, C. J., Sloane, J., and Olney, J., voted for granting of petition.